# 22-4609

# United States Court of Appeals
## for the
## Fourth Circuit

UNITED STATES OF AMERICA,

*Plaintiff/Appellant,*

— v. —

RANDY PRICE,

*Defendant/Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA AT CHARLESTON

# SUPPLEMENTAL BRIEF OF APPELLEE

WESLEY P. PAGE
FEDERAL PUBLIC DEFENDER

LEX A. COLEMAN
SENIOR LITIGATOR, AFPD

JONATHAN D. BYRNE
APPELLATE COUNSEL
OFFICE OF THE FEDERAL PUBLIC DEFENDER
300 Virginia Street East, Room 3400
Charleston, West Virginia  25301
(304) 347-3350

*Counsel for Appellee*

COUNSEL PRESS • VA – (804) 648-3664

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ii

STATEMENT OF THE ISSUE ........................................................................................ 1

ARGUMENT ................................................................................................................... 1

    I.    The "common use" limitation only applies to functional firearm **characteristics** .................................................................................. 1

    II.   "In common use" does not apply to *Bruen* step one, which textually focuses whether a given regulation burdens the conduct of keeping and carrying bearable **arms** for purposes of self-defense ........................................................................................................ 3

    III.  The "in common use" limitation is a function of historical tradition – which is analyzed under *Bruen* step two ..................................... 6

    IV.  Obliterated guns, however, are also arguably in common use ................... 8

CONCLUSION ............................................................................................................. 10

i

# TABLE OF AUTHORITIES

Page(s)

**Cases:**

*District of Columbia v Heller*,
    554 U.S. 570 (2008) ................................................................................ *passim*

*Friedman v. Highland Park*,
    136 S. Ct. 447 (2015) ........................................................................................ 4

*Jackson v. City and County of San Francisco, California*,
    135 S. Ct. 2799 (2015) ...................................................................................... 4

*New York State Rifle & Pistol Ass'n, Inc. v. City of New York, NY*,
    140 S. Ct. 1525 (2020) ...................................................................................... 4

*New York State Rifle & Pistol Association, Inc. v. Bruen*,
    142 S. Ct. 2111 (2022) ............................................................................ *passim*

*Nunn v. State*,
    1 Ga. 243 (1846) ............................................................................................... 6

*Peruta v. California*,
    137 S. Ct. 1995 (2017) ...................................................................................... 4

*Rogers v. Grewal*,
    140 S. Ct. 1865 (2020) ...................................................................................... 4

*Silvester v. Becerra*,
    138 S. Ct. 945 (2018) ........................................................................................ 4

*United States v. Bradley*,
    2023 WL 2621352 (S.D. W. Va. 2023) ........................................................... 2

*United States v. Holton*,
    630 F. Supp. 3d  (N.D. Tex. 2022) ................................................................... 6

*United States v. Miller*,
    307 U.S. 174 (1939) ............................................................................... *passim*

*United States v. Reyna*,
    2022 WL 17714376 (N.D. Ind. Dec. 15, 2022) ............................................... 6

*United States v. Serano*,
    651 F. Supp. 3d 1192 (S.D. Ca. 2023) ............................................................. 6

USCA4 Appeal: 22-4609      Doc: 79            Filed: 03/12/2024      Pg: 4 of 17

*United States v. Tita*,
   2022 WL 17850250 (D. Md. Dec. 15, 2022) ................................................... 6

*Voisine v. United States*,
   136 S. Ct. 2272 (2016) ................................................................................... 4

**Statutes & Other Authorities:**

18 U.S.C. § 922(k) ............................................................................................ 1, 5, 6

1 St. George Tucker, *Blackstone's Commentaries* 143, n.40 (1803) ...................... 6

Antonin Scalia, A Matter of Interpretation:
   Federal Courts and the Law 25 (1997) ......................................................... 4

Antonin Scalia, *Originalism: The Lesser Evil*, 57 U. Cinn. L. Rev. 849 (1989) .................... 4

*Justice Scalia: 'Constitution Is Not a Living Organism'*,
   Fox News Politics (March 15, 2014) .............................................................. 4

Larry Keane, NSSF, Americans Charted Record Book Year for Firearms
   in 2023, With 2024 Looming Large Too (Jan. 24, 2024) ............................... 9

The National Firearms Commerce and Trafficking Assessment (NFCTA):
   Crime Guns - Volume 2 (DOJ Jan. 11, 2023) ................................................ 8

Samuel Johnson, 1 *Dictionary of the English* Language (1828) ............................ 6

Noah Wester, *American Dictionary of the English Language* (1828) ...................... 6

iii

## STATEMENT OF THE ISSUE

Whether the inquiry into a weapon's "common use" occurs at the first step or second step of the framework articulated by *New York State Rifle & Pistol Association, Inc. v. Bruen*, 142 S. Ct. 2111 (2022).

## ARGUMENT[1]

Based on *District of Columbia v Heller*, 554 U.S. 570 (2008), a weapon's "common use" is relevant, if at all, in *Bruen*'s step two analysis. "Common use" is irrelevant under *Bruen*'s step two in this case because it involves a *non-functional* firearm regulation like 18 U.S.C. § 922(k).

### I. The "common use" limitation only applies to functional firearm characteristics.

In *Heller*, Justice Scalia's exchanges with Justice Stevens' dissent regarding *United States v. Miller,* 307 U.S. 174 (1939), demonstrate how the "in common use" limitation applies only to the functional characteristics of firearms. *Heller*, 554 U.S. 570 at 621-626. It is important that *Heller* mentions "common use" in rebutting Stevens' claims *Miller* required a collectivist interpretation of the Second Amendment, and not in placing precise limitations on the amendment's plain text. Instead, *Heller* reads *Miller* as part of what is now *Bruen's* step two historical analysis. *See infra* part III.

---

[1] The facts and procedural posture of this case are adequately set forth by the government's opening brief, which Price previously adopted in his opening brief.

In the Second Amendment context, functionality relates characteristics like how many bullets a gun holds, whether it fires automatically or not, and how long the barrel is. Firearm characteristics that have nothing to do with functionality, like a serial number, are not subject to the "common use" test for Second Amendment protections.[2] While under *Heller* the burden is on the defendant to initially show his conduct is covered by the Second Amendment, this is completely different from whether a given firearm was in "common use."[3]

*Heller* reads *Miller* as tying "common use" to militia service. Militiamen were required to report with weapons that were "in common use at the time." The limitation is properly read as applying to the kind of gun that would be useful in militia service based on its functional characteristics. Under *Miller*, a weapon is unprotected only if it is of the kind that could not be functionally used for militia service. *Miller's* functional "common use" limitation can be further illustrated this way. Say a Raleigh militiaman reported to muster bearing a .25 caliber, red and white handgun with a serial number, while a Chapel Hill militiaman reported bearing a .25 caliber, Carolina blue handgun

---

[2] From a functional perspective, Price's .25 caliber semi-automatic pistol plainly was in common use.

[3] Contrary to the belief of at least one district court, *see United States v. Bradley*, 2023 WL 2621352, *3 (S.D. W. Va. 2023) (citing *Heller,* 554 U.S. at 629), functional characteristics are definitely *not* the only firearm characteristics protected by the Second Amendment. More accurately, they are the only firearm characteristics subject to *Miller*'s "common use" limitation.

2

without one.[4] The non-functional characteristics of either gun would have no impact on the mustering authority's ability to provide both with the same ammunition and rely on both to effectively deploy it against their common enemy. If the Raleigh militiaman fell to enemy fire, the Chapel Hill militiaman could still recover and reuse Raleigh's gun and ammunition to further their common cause – regardless of the gun color, or status/condition of any serial number. The functional characteristics are, therefore, what *Miller* requires to be "in common use".

> II. **"In common use" does not apply to *Bruen* step one, which textually focuses whether a given regulation burdens the conduct of keeping and carrying bearable arms for purposes of self-defense.**

*Heller*'s textual analysis of the Second Amendment's operative clause makes clear, as a matter of plain language, that "arms" means "all firearms," not just firearms Congress believes should be regulated. *Heller's* textual examination of the operative clause cites founding era dictionaries defining arms this way, and rejects the idea that "arms" only include those weapons in existence in 1791. *Heller*, 554 U.S. at 581. "The Second Amendment extends *prima facie*, to all instruments that constitute bearable arms, even those not in existence at the time of the founding." *Id.* at 582.

This matters because *Heller*'s extensive textual – not historical, but textual – analysis of "keep and bear arms" said absolutely nothing about "common use" as a

---

[4] The type of firearm Price possessed, a Ravens Arms MP-25. *See* Price Brief, Sec. I, C-D, at 5-10.

3

*textual* limitation on Second Amendment protections. Today, this is what we call *Bruen*'s step one. While *Heller* did later discuss Second Amendment limitations along with what firearms are generally protected, it was in the context of historical analysis. Historical analysis is what today we call *Bruen's* step two. So with respect to the Second Amendment's plain text, "common use" and *Bruen*'s step one - it really is a matter of "the written constitution says what it says, and doesn't say what it doesn't say."[5]

It is also important that Justice Thomas did not author the *Bruen* majority decision in a vacuum. Instead, after *McDonald*, Justice Thomas either joined or authored at least seven dissents to multiple cert denials and one merits decision in Second Amendment cases which easily foreshadowed *Bruen*.[6] In each instance, he accurately observed that the states and lower courts were resisting the Supreme Court's decisions

---

[5] *Justice Scalia: 'Constitution Is Not a Living Organism'*, Fox News Politics (March 15, 2014). *See also* Antonin Scalia, A Matter of Interpretation: Federal Courts and the Law 25 (1997); Antonin Scalia, *Originalism: The Lesser Evil*, 57 U. Cinn. L. Rev. 849, 862-63 (1989).

[6] S*ee e.g. Rogers v. Grewal*, 140 S. Ct. 1865 (2020)(appeal of New Jersey may issue carry permit requirement and near-total prohibition on public carry); *New York State Rifle & Pistol Ass'n, Inc. v. City of New York, NY*, 140 S. Ct. 1525 (2020)(appeal of New York firearm license ordinance, dismissed as moot when city amended ordinances during appeal; Alito dissent joined by Gorsuch and Thomas); *Silvester v. Becerra*, 138 S. Ct. 945 (2018)(appeal of California's 10-day waiting/cooling off period for firearm purchases); *Peruta v. California*, 137 S. Ct. 1995, 1999 (2017)(appeal of California's prohibition of public carry and carrying concealed firearms in public); *Voisine v. United States*, 136 S. Ct. 2272, 2291-92 (2016)(appeal of denying Second Amendment protections based on reckless misdemeanor conduct); *Friedman v. Highland Park*, 136 S. Ct. 447, 449 (2015)(appeal of Illinois' AR-style rifle and large capacity magazine bans); *Jackson v. City and County of San Francisco, California*, 135 S. Ct. 2799, 2800-02 (2015)(appeal of California ordinance requiring trigger locks for handguns stored in residences).

4

in *Heller* and *McDonald* by failing to protect Second Amendment rights to the same extent they protected other constitutional rights. Means-end scrutiny was part of this.

The simplicity with which *Bruen*'s first step triggers the presumption of unconstitutionality is consistent with Justice Thomas' post-*McDonald* concerns, as well as how the Supreme Court ultimately rectified them. *Bruen*'s first step is necessarily general, while only narrowly addressing whether a regulation in any way burdens Second Amendment protected conduct. *Heller* defined Second Amendment protected conduct as no more than keeping and carrying any bearable arms for purposes of confrontation (*i.e.* individual self-defense). *Bruen*'s step one now readily provides what post-*Heller* lower courts cleverly avoided – a robust protection of Second Amendment interests through a presumption of unconstitutionality, coupled with structurally shifting the burden to the Government to establish a historical tradition of firearm regulation that would otherwise sustain a given restriction. All *Bruen*'s step one should do (and in most instances all it will do), however, is get the court and the parties to the historical analysis in step two, where *Bruen* requires the heavy lifting. The only difference from the post-*Heller*/pre-*Bruen* era is that the Government must now carry the burden of rebutting the presumption of unconstitutionality.

The district court was the first court to apply *Bruen* to § 922(k). Subsequent decisions dismiss the district court's straight forward textual analysis, arguing because alternatives to obliterated firearms are available that § 922(k) does not infringe on

5

Second Amendment protected conduct.[7] These decisions incorrectly conclude that "infringe" requires a complete destruction of the right in order to trigger protection, as opposed to any encroachment or burden. This reasoning contradicts *Heller*, 554 U.S. at 629, as well as definitions of "infringe" at the time of the founding[8] and other sources *Heller* cited to interpret the right.[9]

### III. The "in common use" limitation is a function of historical tradition – which is analyzed under *Bruen* step two.

Even assuming "in common use" is relevant to a § 922(k) challenge, it is still a *Bruen* step two issue. *Heller* reads *Miller*'s "in common use" limitation as according *"with the historical understanding of the scope of the right, see* Part III, *infra.*" *Heller*, 554 U.S. at 625 (emphasis added). *Heller* continues in Part III, "*Miller* said, as we explained, that the sorts of weapons protected were those 'in common use at the time.' *We think that limitation is fairly supported by the historical tradition* of prohibiting the carrying of 'dangerous and unusual weapons.'" *Id.* at 627 (cleaned up) (emphasis added).

---

[7] *See e.g. United States v. Serano*, 651 F. Supp. 3d 1192 (S.D. Ca. 2023); *United States v. Tita*, 2022 WL 17850250 (D. Md. Dec. 15, 2022); *United States v. Reyna*, 2022 WL 17714376 (N.D. Ind. Dec. 15, 2022); *United States v. Holton*, 630 F. Supp. 3d 704 (N.D. Tex. 2022).

[8] *See* Samuel Johnson, 1 *Dictionary of the English* Language at 1007, 1101 (4th ed. 1773); Noah Wester, *American Dictionary of the English Language* (1828).

[9] *See* 1 St. George Tucker, *Blackstone's Commentaries* 143, n.40 (1803)("The right of the people to keep and bear arms shall not be infringed . . . and this without any qualification as to their condition or degree. . .)(emphasis added). *See also Nunn v. State*, 1 Ga. 243, 251 (1846)("The right of the whole people . . . to keep and bear arms . . . shall not be infringed, curtailed, or broken in upon, in the smallest degree.").

6

In other words, the "in common use" limitation comes from "historical tradition" – i.e. *Bruen* step two. *See also Heller*, 554 U.S. at 626 ("[a]lthough **we do not undertake an exhaustive historical analysis** today of the full scope of the Second Amendment…").

The Court reaffirmed this point in *Bruen*, noting that it "relied on the **historical understanding** of the Amendment to demark the limits on the exercise of that right." *Bruen*, 142 S. Ct. at 2128 (emphasis added). In discussing that the Second Amendment right is not unlimited, the Court noted its reliance on Blackstone and *Miller* in holding that "it fairly supported by the **historical tradition** of prohibiting the carrying of dangerous and unusual weapons that the Second Amendment protects the possession and use of weapons that are in common use at the time." *Id.* (cleaned up). The "in common use at the time" limitation, therefore, plainly derives from "historical analysis," not from the Second Amendment's plain text. *See also Bruen*, 142 S. Ct. at 2132. When *Bruen* applied its own analysis, the Court treated "in common use" as being relevant to step two, observing that even if the state's reading of "these colonial statutes were correct, it would still do little to support restrictions on the public carry of handguns today." *Id.* at 2143. The Court pointed to the "**historical tradition**" it used to "explain[] that the Second Amendment protects only the carrying of weapons that are those in common use at the time, as opposed to those that are highly unusual to society at large." *Ibid* (cleaned up)(emphasis added). The Court then concluded that "even if these colonial laws prohibited the carrying of handguns because they were considered dangerous and unusual weapons in the 1690s, they provide no justification for laws

7

restricting the public carry of weapons that are unquestionably in common use today." *Ibid* (cleaned up). This language shows that whether the government can ban firearms "in common use today" depends on whether there are historical regulations that "justif[y]" such a law. This is totally *Bruen*'s step two historical analysis, which places the burden of showing something is not "in common use" squarely on the United States.

### IV.   Obliterated guns, however, are also arguably in common use.

The National Firearms Commerce and Trafficking Assessment (NFCTA): Crime Guns - Volume 2 (DOJ Jan. 11, 2023),[10] provides a partial answer to Judge Wynn's question during the initial panel oral argument of how many obliterated serial number firearms exist. Significantly, the Gun Control Act of 1968 only ensures a firearm can be traced from a Federal Firearms Licensee to the first retail purchaser. Part II, at 1-2 of 31; Part III, at 23 of 55. Between 2017 and 2021, federal *and* state law enforcement agencies submitted a combined 1,922,577 crime guns[11] to the ATF for tracing. 1,482,861 or 77% were traced to the original purchaser. Part II, at 2. The firearm being manufactured before 1968 when Congress first required serial numbers accounted for 65,945 or 3.4 % of traces *not* identifying the original purchaser. The serial numbers

---

[10] "This Volume of the NFCTA . . . represents the first comprehensive report incorporating crime gun information from the full range of sources used by ATF in more than twenty years." https://www.atf.gov/firearms/national-firearms-commerce-and-trafficking-assessment-nfcta-crime-guns-volume-two?utm_medium=email&utm_source=govdelivery (last viewed March 4, 2024).

[11] A "crime gun" is any firearm used in a crime or identified by law enforcement as suspected of having been used in a crime. Introduction, at 8 of 8, n.1.

8

having been obliterated accounted for another 48,601, or 2.5 %. Part III, at 4, and Table OFT-05, at 5 of 55. While defendant believes it irrelevant to this Court's analysis, to the extent the number of obliterated guns should be considered at all – the burden is on the government to show that they are not in common use. The United States cannot do this. While ATF data fails to include all unserialized and obliterated guns not used in crimes, the proportionate number of obliterated crime guns relative to all crime guns still establishes their common use. Industry data estimates 15.9 million new firearms were sold in 2023 alone.[12] Extrapolating the ATF crime gun apportionment of 2.5% for obliterated guns, would still allow for an estimated 397,500 of such guns in 2023.

Separately *amici* make means-ends scrutiny arguments that are both unpersuasive and improper under *Bruen*. Pursuant to ATF's own data, of the 1,482,702 crime guns traced to their original purchaser, 866,120 or 58% had a different purchaser than possessor; another 435,833 or 29% were recovered without a known possessor; and *only* 180,749 or *12%* had the same purchaser and possessor. Part III, at 26 of 55, and Figure IFT-05. Assuming the final possessor and the actual criminal perpetrator are the same, at only 12% - serial number tracing's ultimate impacts have been statistically unremarkable.

---

[12]  Larry Keane, NSSF, Americans Charted Record Book Year for Firearms in 2023, With 2024 Looming Large Too (Jan. 24, 2024), https://www.nssf.org/articles/2023-record-year-for-firearms-2024-looming-large/ (last viewed March 12, 2024_

9

## CONCLUSION

*Miller*'s "common use" limitation only applies to functional firearm characteristics under the Second Amendment. It should not be relevant in a Second Amendment challenge to a non-functional firearm regulation like § 922(k). Even if deemed applicable to § 922(k), however, "common use" derives from historical tradition under *Bruen*'s step two on which the United States bears the ultimate burden of proof.

The district court correctly applied *Bruen*'s "distinctly similar" historical standard to find that § 922(k) is unconstitutional. This does not mean any other statute regulating firearm serial numbers differently is necessarily also unconstitutional. None of those other statutes are before the Court. Section 922(k) by its plain text directly burdens the possession of bearable firearms. The district court correctly concluded that there were no distinctly similar historical traditions of firearm regulation that would rebut *Bruen*'s presumption of unconstitutionality. Nothing the United States has submitted for *de novo* review on appeal has established otherwise. The district court's decision constituted the long overdue Second Amendment deference *Bruen* intended by doing away with means-end scrutiny. For these reasons, the district court's order of dismissal should be affirmed.

                                            Respectfully submitted,

                                            **RANDY PRICE**

                                            By Counsel

**WESLEY P. PAGE**
**FEDERAL PUBLIC DEFENDER**

**s/Lex A. Coleman**
Lex A. Coleman
Senior Litigator, AFPD
Office of the Federal Public Defender
Room 3400, United States Courthouse
300 Virginia Street East
Charleston, West Virginia 25301
E-mail: lex_coleman@fd.org

Jonathan D. Byrne
Appellate Counsel
Office of the Federal Public Defender
Room 3400, United States Courthouse
300 Virginia Street East
Charleston, West Virginia 25301
E-mail: jonathan_byrne@fd.org

## CERTIFICATE OF COMPLIANCE

1.  This brief complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

    [ X ] this brief contains [*2,678*] words.

    [   ] this brief uses a monospaced type and contains [*state the number of*] lines of text.

2.  This brief complies with the typeface and type style requirements because:

    [ X ] this brief has been prepared in a proportionally spaced typeface using [*Microsoft Word 365*] in [*14pt Garamond*]; *or*

    [   ] this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].

Dated: <u>March 12, 2024</u>        <u>/s/ Lex A. Coleman</u>
                                     *Counsel for Appellant*

                                     <u>/s/ Jonathan D. Byrne</u>
                                     *Counsel for Appellant*

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on this 12th day of March, 2024, I caused this Supplemental Brief of Appellee to be filed electronically with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to all counsel as registered CM/ECF users.

/s/ Lex A. Coleman  
*Counsel for Appellant*

/s/ Jonathan D. Byrne  
*Counsel for Appellant*