No. 22-4609

IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
Plaintiff–Appellant,

v.

RANDY PRICE,
Defendant–Appellee.

On Appeal from the United States District Court for the
Southern District of West Virginia, No. 2:22-cr-97
(Hon. Joseph R. Goodwin)

**SUPPLEMENTAL BRIEF FOR THE UNITED STATES**

| | |
|---|---|
| WILLIAM S. THOMPSON<br>United States Attorney | NICOLE M. ARGENTIERI<br>Acting Assistant Attorney General |
| JENNIFER RADA HERRALD<br>Assistant United States Attorney<br>Southern District of West Virginia | LISA H. MILLER<br>Deputy Assistant Attorney General<br><br>WILLIAM A. GLASER<br>Attorney, Appellate Section<br>Criminal Division<br>U.S. Department of Justice<br>950 Pennsylvania Ave, NW, Ste. 1264<br>Washington, DC 20530<br>(202) 532-4495<br>William.Glaser@usdoj.gov |

# TABLE OF CONTENTS

# TABLE OF CONTENTS

TABLE OF CONTENTS .................................................................................................i

TABLE OF AUTHORITIES .......................................................................................ii

INTRODUCTION AND SUMMARY OF ARGUMENT ........................... 1

ARGUMENT .................................................................................................2

    A.    The "common use" inquiry is best understood as falling within *Bruen*'s first, textual inquiry............................................... 2

    B.    The Supreme Court has conclusively held that the Second Amendment's "common use" limitation accords with historical tradition, and this Court need not conduct a historical inquiry.................................................................................. 6

    C.    Firearms with obliterated serial numbers are not in common use for lawful purposes............................................................. 9

CONCLUSION............................................................................................. 10

CERTIFICATE OF COMPLIANCE ....................................................... 11

## TABLE OF AUTHORITIES

**Cases**

*Clark v. Community for Creative Non-Violence*,
 468 U.S. 288 (1984) ................................................................................................5

*District of Columbia v. Heller*,
 554 U.S. 570 (2008) ............................................................................ 2, 3, 4, 6, 7, 9

*Friedman v. City of Highland Park, Ill.*,
 136 S. Ct. 447 (2015) ........................................................................................... 10

*New York State Rifle & Pistol Association, Inc. v. Bruen*,
 597 U.S. 1 (2022) ................................................................................ 2, 4, 5, 6, 7, 9

*Reynolds v. Middleton*,
 779 F.3d 222 (4th Cir. 2015) ..................................................................................5

*United States v. Avila*,
 672 F. Supp. 3d 1137 (D. Colo. 2023) ...................................................................8

*United States v. Bradley*,
 No. 22-CR-98, 2023 WL 2621352 (S.D.W.V. Mar. 23, 2023) ..............................8

*United States v. Cherry*,
 No. 19-CR-122, 2024 WL 263926 (E.D. Pa. Jan. 24, 2024) .................................8

*United States v. Dangleben*,
 No. 23-MJ-44, 2023 WL 6441977 (D.V.I. Oct. 3, 2023) ......................................8

*United States v. Dixson*,
 No. 21-CR-54, 2023 WL 7102115 (E.D. Mo. Oct. 26, 2023) ...............................8

*United States v. Holton*,
 639 F. Supp. 3d 704 (N.D. Tex. 2022) ...................................................................8

*United States v. Marzzarella*,
 614 F.3d 85 (3rd Cir. 2010), *abrogated on other grounds by New York
 State Rifle & Pistol Association, Inc. v. Bruen*, 597 U.S. 1 (2022) ................ 9, 10

*United States v. Miller*,
    307 U.S. 174 (1939) .................................................................................. 3, 6

*United States v. Patton*,
    No. 21-CR-3084, 2023 WL 6230413 (D. Neb. Sep. 26, 2023) ..................... 8

*United States v. Reyna*,
    No. 21-CR-41, 2022 WL 17714376 (N.D. Ind. Dec. 15, 2022).................... 8

*United States v. Serrano*,
    651 F. Supp. 3d 1192 (S.D. Cal. 2023) ........................................................ 8

*United States v. Sharkey*,
    --- F. Supp. 3d ----, 2023 WL 6139615 (S.D. Iowa Sep. 20, 2023) ............. 8

*United States v. Sing-Ledezma*,
    --- F. Supp. 3d ----, 2023 WL 8587869 (W.D. Tex. Dec. 11, 2023).............. 8

*United States v. Tita*,
    No. 21-CR-334, 2022 WL 17850250 (D. Md. Dec. 22, 2022)...................... 8

*United States v. Trujillo*,
    670 F. Supp. 3d 1235 (D.N.M. 2023).......................................................... 8

*United States v. Walter*,
    No. 20-CR-39, 2023 WL 3020321 (D.V.I. Apr. 20, 2023) .......................... 8

**Constitutional Provisions**

U.S. Const. amend. II ................................................................................................ 3

**Other Authorities**

Bureau of Alcohol, Tobacco, Firearms and Explosives, 2 National
    Firearms Commerce and Trafficking Assessment, Part III: Crime
    Guns Recovered and Traced Within the United States and Its
    Territories .................................................................................................... 9

David M. Kennedy *et al.*, *Youth Violence in Boston: Gun Markets, Serious
    Youth Offenders, and A Use-Reduction Strategy*, 59 Law & Contemp.
    Probs. 147 (Winter 1996) ........................................................................... 10

## INTRODUCTION AND SUMMARY OF ARGUMENT

The question presented in this government appeal is whether 18 U.S.C. § 922(k)'s prohibition on possessing a firearm with an obliterated serial number is consistent with the Second Amendment. This Court requested supplemental briefing to address "[w]hether the inquiry into a weapon's 'common use' occurs at the first step or second step of the framework articulated in *New York State Rifle & Pistol Association, Inc. v. Bruen*, 142 S. Ct. 2111 (2022)," as well as "who has the burden of establishing a weapon's 'common use.'" Order, Doc. 78 at 2 (Mar. 6, 2023). As explained below, the "common use" inquiry is best understood as falling within *Bruen*'s first, textual inquiry. *Bruen*'s "plain text" inquiry looks at how the Second Amendment's text was understood at the time of adoption, and the historical understanding of the right to bear arms was limited to weapons in common use. Moreover, *Bruen* itself appeared to treat the "common use" inquiry as part of the plain-text analysis.

Even if the "common use" inquiry falls within *Bruen*'s second inquiry, the Supreme Court has conclusively determined that limiting the Second Amendment's protections to firearms in common use is consistent with historical tradition. And firearms with obliterated serial numbers are not typically possessed for lawful purposes. Thus, whether as a matter of text, history, or both, such firearms are unprotected.

1

# ARGUMENT

### A. The "common use" inquiry is best understood as falling within *Bruen*'s first, textual inquiry.

*Bruen* set forth two inquiries for courts to conduct when "applying the Second Amendment." *New York State Rifle & Pistol Association, Inc. v. Bruen*, 597 U.S. 1, 24 (2022). First, "[w]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." *Id.* Second, if a regulation burdens protected conduct, "[t]he government must . . . justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id.*

The "common use" inquiry is best understood as part of *Bruen*'s "plain text" inquiry, which is not completely distinct from any inquiry into history. As *Bruen* explained, courts must consider the "Second Amendment's text, as informed by history." *Bruen*, 597 U.S. at 19. And the Supreme Court has consulted "a variety of legal and other sources" in assessing the Second Amendment's original meaning, *District of Columbia v. Heller*, 554 U.S. 570, 605 (2008), including English history, *id.* at 598-600; analogous provisions in state constitutions, *id.* at 600-03; Second Amendment precursors, *id.* at 603-05; commentary, *id.* at 605-10, 616-19; case law, *id.* at 610-14; and legislative debates, *id.* at 614-16.

2

The Second Amendment protects the right to keep and bear "Arms," U.S. Const. amend. II, a term which, at the broadest level, includes all "[w]eapons of offence" and "armour of defence," *Heller*, 554 U.S. at 581 (quotation omitted). Yet *Heller* clarified that the Second Amendment does not protect all "[a]rms." The "right secured by the Second Amendment is not unlimited" and was not historically understood as "a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Id.* at 626. And *Heller* recognized an "important limitation on the right to keep and carry arms"—"the sorts of weapons protected were those 'in common use at the time.'" *Id.* at 627 (quoting *United States v. Miller*, 307 U.S. 174, 179 (1939)). Put another way, "the Second Amendment does not protect those weapons not typically possessed by law-abiding citizens for lawful purposes." *Id.* at 625.

*Heller* explained that this "common use" limitation "accords with the historical understanding of the scope of the right" and "is fairly supported by the historical tradition of prohibiting the carrying of 'dangerous and unusual weapons.'" *Heller*, 554 U.S. at 625-27. But even though that limitation is supported by history, it is still best understood as part of the inquiry into the Second Amendment's plain text.

3

*Heller* explained that the Second Amendment "was widely understood to codify a pre-existing right, rather than to fashion a new one." *Heller*, 554 U.S. at 603. Because the Second Amendment "codified venerable, widely understood liberties," *id.* at 605, courts cannot look at the Amendment's text in isolation but must instead consider the text "according to the understandings of those who ratified it," *Bruen*, 597 U.S. at 28. And, as *Heller* explained, the right to bear arms was not understood in 1791 as "a right to keep and carry any weapon whatsoever," *Heller*, 554 U.S. at 626, but only as a right to possess firearms "'in common use at the time,'" *id.* at 627. Because the "common use" inquiry relates to how the "pre-existing right" was understood at the time of the founding, it is part of *Bruen*'s textual inquiry.

*Bruen*'s mode of analysis confirms this point. In part III-A of the *Bruen* opinion, the Supreme Court observed that the parties did not dispute "that handguns are weapons 'in common use' today for self-defense." *Bruen*, 597 U.S. at 32. The Court wrapped up part III-A by concluding that "[t]he Second Amendment's *plain text* . . . presumptively guarantee[d]" the petitioners a right to bear arms in public. *Id.* at 33 (emphasis added). Only in the next section, part III-B, did the Court address New York's arguments that the challenged law was "consistent with this Nation's historical tradition of firearm regulation." *Id.* at 34. Thus, *Bruen* treated the "common use" question as part

4

of its "plain text" inquiry, rather than its inquiry into the tradition of firearm regulation.

*Bruen* did not specifically address who bears the burden of showing that the Second Amendment's plain text does or does not protect an individual's conduct. But a party challenging a statute's constitutionality ordinarily bears the initial burden of showing that his conduct is protected. For example, in the First Amendment context, the government assumes the burden of "justify[ing] impingements on First Amendment interests" only if the claimant first "demonstrate[s] that the First Amendment even applies." *Clark v. Community for Creative Non-Violence*, 468 U.S. 288, 293 n.5 (1984); *see Reynolds v. Middleton*, 779 F.3d 222, 226 (4th Cir. 2015) ("[W]here a plaintiff claims suppression of speech under the First Amendment, the plaintiff bears the initial burden of proving that speech was restricted by the governmental action in question." (quotation omitted)). Given that "*Heller* repeatedly compared the right to keep and bear arms" to "the freedom of speech in the First Amendment," *Bruen*, 597 U.S. at 24, the same burden allocation ought to apply here. Because the "common use" question falls within *Bruen*'s textual inquiry, the party challenging a firearm regulation should bear the burden of showing that the regulated weapon is in common use.

5

> B. **The Supreme Court has conclusively held that the Second Amendment's "common use" limitation accords with historical tradition, and this Court need not conduct a historical inquiry.**

If the "common use" inquiry were instead treated as part of *Bruen*'s second inquiry, then the government would bear the burden of "demonstrating that [the challenged regulation] is consistent with the Nation's historical tradition of firearm regulation." *Bruen*, 597 U.S. at 24. But the Supreme Court has already done much of that work. The Court has established both that the "common use" limitation is consistent with America's historical tradition of firearms regulation, *Heller*, 554 U.S. at 627, and that the inquiry focuses on firearms that are in common use today, *Bruen*, 597 U.S. at 47.

*Heller* explained that "[t]he traditional militia was formed from a pool of men bringing arms 'in common use at the time' for lawful purposes like self-defense." *Heller*, 554 U.S. at 624 (quoting *Miller*, 307 U.S. at 179). And *Heller* held that the Second Amendment's "limitation" to weapons "in common use" was "fairly supported by the historical tradition of prohibiting the carrying of 'dangerous and unusual weapons,'" citing a dozen historical sources in support. *Id.* at 627. As *Bruen* observed, *Heller* drew on "historical tradition" to conclude that "the Second Amendment protects only the carrying of weapons that are those 'in common use at the time,' as opposed to those that 'are highly unusual in society at large.'" *Bruen*, 597 U.S. at 47 (quoting *Heller*, 554 U.S. at

6

627).  Thus, the Court has conclusively established that the "common use" limitation is consistent with America's tradition of firearm regulation.

Given this binding precedent, this Court need determine only whether firearms with obliterated serial numbers are presently "'in common use . . .' for lawful purposes like self-defense."  *Heller*, 554 U.S. at 624.  Answering that question requires no historical inquiry.  *Heller* dismissed as "bordering on the frivolous" the suggestion that "only those arms in existence in the 18th century are protected by the Second Amendment."  *Id.* at 582.  And *Bruen* made clear that the relevant question is whether a particular firearm is "in 'common use' for self-defense *today*."  *Bruen*, 597 U.S. at 47 (emphasis added).

This Court need not determine where exactly the "common use" inquiry falls in the *Bruen* inquiry or which party bears the burden of showing that a particular firearm is (or is not) in "common use."  The allocation of the burden would affect the outcome only in rare cases, if any.  *Heller*, for example, easily concluded that short-barreled shotguns were "not typically possessed by law-abiding citizens for lawful purposes," *Heller*, 554 U.S. at 625, without suggesting that its conclusion would vary depending on which party had the burden.  And, as explained below, firearms with obliterated serial numbers are not "typically possessed by law-abiding citizens for lawful purposes."  *Id.* at 625.

7

This Court would need to conduct a detailed historical inquiry only if it determined that firearms with obliterated serial numbers are in common use today for lawful purposes. Assuming they are, § 922(k) is nevertheless consistent with the historical tradition of firearm regulation, as explained in the government's prior briefing. *See* Opening Br. 21-31; Reply Br. 11-26. Indeed, apart from the district court in this case, every district court to consider the question has held that § 922(k) is consistent with tradition.[1] If this Court were to conduct an inquiry into traditional firearm regulations, it should reach the same conclusion.

---

[1] *See United States v. Cherry*, No. 19-CR-122, 2024 WL 263926, at *5-6 (E.D. Pa. Jan. 24, 2024); *United States v. Sing-Ledezma*, --- F. Supp. 3d ----, 2023 WL 8587869, at *4-5 (W.D. Tex. Dec. 11, 2023); *United States v. Dixson*, No. 21-CR-54, 2023 WL 7102115, at *3-4 (E.D. Mo. Oct. 26, 2023); *United States v. Dangleben*, No. 23-MJ-44, 2023 WL 6441977, at *7-9 (D.V.I. Oct. 3, 2023); *United States v. Patton*, No. 21-CR-3084, 2023 WL 6230413, at *3-4 (D. Neb. Sep. 26, 2023); *United States v. Sharkey*, --- F. Supp. 3d ----, 2023 WL 6139615, at *2-4 (S.D. Iowa Sep. 20, 2023); *United States v. Trujillo*, 670 F. Supp. 3d 1235, 1242-43 (D.N.M. 2023); *United States v. Walter*, No. 20-CR-39, 2023 WL 3020321, at *5 (D.V.I. Apr. 20, 2023); *United States v. Bradley*, No. 22-CR-98, 2023 WL 2621352, at *4-5 (S.D.W.V. Mar. 23, 2023); *United States v. Serrano*, 651 F. Supp. 3d 1192, 1211 (S.D. Cal. 2023); *United States v. Tita*, No. 21-CR-334, 2022 WL 17850250, at *7 (D. Md. Dec. 22, 2022); *United States v. Holton*, 639 F. Supp. 3d 704, 711-12 (N.D. Tex. 2022).

Two other district courts found no need to reach that question given their conclusion (like many of the cases just cited) that firearms with obliterated serial numbers are not protected by the Second Amendment. *See United States v. Avila*, 672 F. Supp. 3d 1137, 1144 (D. Colo. 2023); *United States v. Reyna*, No. 21-CR-41, 2022 WL 17714376, at *5 (N.D. Ind. Dec. 15, 2022).

8

### C. Firearms with obliterated serial numbers are not in common use for lawful purposes.

As previously explained, *see* Opening Br. 17-18, Reply Br. 2-3, firearms with obliterated serial numbers are not in "common use" or "typically possessed by law-abiding citizens for lawful purposes." *Heller*, 554 U.S. at 624-25. Such firearms are not common, even among criminals. Between 2017 and 2021, only 2.5% of guns used in crimes that were submitted to the ATF had obliterated serial numbers.[2] The percentage of defaced firearms is undoubtedly far lower among guns possessed by law-abiding citizens.

Moreover, firearms with obliterated serial numbers are not commonly used "for lawful purposes." *Heller*, 554 U.S. at 624-25. Instead, such firearms "are of particular value to those engaged in illicit activity." *United States v. Marzzarella*, 614 F.3d 85, 98 (3rd Cir. 2010), *abrogated on other grounds by Bruen*, 597 U.S. 1. The only reason to obliterate a serial number is to prevent a firearm from being traced—ordinarily to prevent the gun or its possessor from being linked to a theft, an illegal straw purchase, or some other crime. *See* David M. Kennedy *et al.*, *Youth Violence in Boston: Gun Markets, Serious Youth*

---

[2] Bureau of Alcohol, Tobacco, Firearms and Explosives, 2 National Firearms Commerce and Trafficking Assessment, Part III: Crime Guns Recovered and Traced Within the United States and Its Territories, pgs. 5, 32, available at https://www.atf.gov/firearms/docs/report/nfcta-volume-ii-part-iii-crime-guns-recovered-and-traced-us/download.

*Offenders, and A Use-Reduction Strategy*, 59 Law & Contemp. Probs. 147, 174-75 (Winter 1996). There is "no compelling reason why a law-abiding citizen would prefer an unmarked firearm." *Marzzarella*, 614 F.3d at 95. "[A] person is just as capable of defending himself with a marked firearm as with an unmarked firearm." *Id.* at 94. Because such firearms are "not in common use" but are "specially adapted to unlawful uses," they are not protected by the Second Amendment. *Friedman v. City of Highland Park, Ill.*, 136 S. Ct. 447, 449 (2015) (Thomas, J., dissenting from denial of certiorari).

## CONCLUSION

This Court should reverse the judgment of the district court.

Respectfully submitted,

WILLIAM S. THOMPSON
United States Attorney

JENNIFER RADA HERRALD
Assistant United States Attorney
Southern District of West Virginia

NICOLE M. ARGENTIERI
Acting Assistant Attorney General

LISA H. MILLER
Deputy Assistant Attorney General

s/William A. Glaser
WILLIAM A. GLASER
Attorney, Appellate Section
Criminal Division
U.S. Department of Justice
950 Pennsylvania Ave, NW, Ste. 1264
Washington, DC 20530
(202) 532-4495
William.Glaser@usdoj.gov

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the Court's March 6, 2024 order because it does not exceed ten pages, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in Calisto MT 14-point type.

s/William A. Glaser<br>
WILLIAM A. GLASER