# FEDERAL PUBLIC DEFENDER
## SOUTHERN DISTRICT OF WEST VIRGINIA

*Federal Public Defender*
**WESLEY P. PAGE**

*First Assistant Federal Public Defender*
**DAVID R. BUNGARD**

*Senior Litigator*
**LEX A. COLEMAN**

ROOM 3400, UNITED STATES COURTHOUSE
300 VIRGINIA STREET, EAST
CHARLESTON, WEST VIRGINIA 25301-2523
*Phone*: (304) 347-3350
*Fax*: (304) 347-3356
*Website*: http://wvs.fd.org

*Appellate Counsel*
**JONATHAN D. BYRNE**

*Assistant Federal Public Defenders*
**RACHEL E. ZIMAROWSKI**
**CLINT CARTE**
**EMILY L. SZOPINSKI**
**CHRISTOPHER W. MAIDONA**

29 March 2024

Nwamaka Anowi, Clerk
United States Court of Appeals
For the Fourth Circuit
Lewis F. Powell Jr. Courthouse & Annex
1100 East Main Street, Suite 501
Richmond, VA 23219

Re:   *Price Response to United States' Rule 28(j) letter*
      **United States v. Randy Price**
      **4CCA Appeal No. 22-4609**
      **USDC SDWV Case No. 2:22-cr-00097**

Dear Ms. Anowi:

The 1996 Youth Violence in Boston Gun Project is of limited utility under *Bruen*. The study concerned a narrow age group, and a single city's market for illicit firearms. The Project's own authors characterized it as being an "experiment", which "clearly departed" from strict traditional research and evaluation functions. *See* 59 Law & Contemp. Probs. 147, 149. The Project further conceded "our knowledge" "is primitive", "matched by a paucity of research". *Id.* at 150.

The specific Boston trace data is now over twenty years old. Starting from 1991, the data set only involved 3,543 records for guns where the suspect's age was even known, and 1,550 associated with the targeted age group. 1,186 only involved simple possession offenses. Through May 1995, only 305 records related to obliterated guns. *Id.* at 170-71, n. 82 & 193, Table 10.  Finally, the Project (without any empirical support) identified three exclusive unlawful purposes for possessing obliterated guns. Ironically, when comparing simple possession and substantive crime guns for the Project period - the type of gun associated with substantive crimes was 50% <u>less</u> likely to have an obliterated serial number. *Id.* at 174-175. So, contrary to the United States' claims, the Boston Gun Project numbers do not establish that obliterated guns are

possessed solely for unlawful purposes. The much more recent ATF data does not either. On these points, Judge Richardson is absolutely right.

The suggestion such statistics shouldn't matter under *Bruen* is incorrect. In common use for lawful purposes is still part of *Bruen*'s step two historical analysis; but within that step, empirical data is a matter of evidence the government must bring forward for the Court to consider relative to whether it can carry the burden of ultimately proving a well-established and representative tradition of firearm regulation which would support the constitutional legitimacy of Section 922(k). This would include the question of in common use for lawful purposes, which Price has previously shown is a functionality question. Price maintains the government cannot prevail where the pistol he possessed was not a dangerous and unusual weapon.

**Sustaining the district court's ruling will in no way unravel the effectiveness of firearm manufacturers affixing serial numbers to firearms**, which in turn facilitates the tracing systems lauded by the Boston Gun Project, the ATF, and *amici* in 41 states tracking transfers from FFLs to first retail purchasers. Sustaining the district court's ruling will leave such mechanisms completely intact, despite their being entirely twentieth century conventions.

Sincerely,

Lex A. Coleman
Senior Litigator, AFPD

cc.  William A. Glasner, Esq., USDOJ Crim. Div, App. Sect.